*James, for appellants.*

*Rodman, for appellee.*

---

## H. J. Oglevie and Others *v.* J. Wiley.

**Pleading—Reply—Insufficiency.**
> A reply denying each and every allegation in defendant's claim, and demanding proof in full, is insufficient, since a specific denial of payment should be made.

**Pleading—Issues and Proof.**
> Under an allegation of indebtedness for groceries sold and delivered, proof of indebtedness for oxen, wagon and plow, etc., is not admissible.

**Attachment—Liability of Sureties on Undertaking.**
> The sureties in an undertaking in attachment proceedings can not be held liable after reversal of the judgment in the case

APPEAL FROM McCRACKEN CIRCUIT COURT.

February 14, 1873.

Opinion by Judge Peters:

Appellee in his original petition alleges that appellant and himself had been partners in the blacksmith business, that the co-partnership had been dissolved by mutual consent, that by the terms of dissolution appellant bound himself to pay all the outstanding debts of said firm, in consideration that appellee had assigned to him his entire interest in the assets of the firm; that there seems to be a debt owing by the last firm to Ragin, Dickey & Carson for $74.45, which appellant had failed and neglected to pay, and suit had been brought against appellee, and judgment would be rendered against him for said debt and cost amounting to $10 or $15, that there might be other partnership liabilities of which, however, he had no knowledge, as appellant had never rendered him an account or list of the firm debts, that appellant was then a new resident of the state, but had personal estate within the jurisdiction of the court, and as appellee was in danger of having the debts to pay he prayed for and obtained an order of attachment against the property of appellant for his indemnity. In his answer appellant admitted that a partnership had existed as stated in the petition, and that it had been dissolved as therein set forth; that the debt to Ragin, Dickey & Carson was due and unpaid, that the late firm owed another debt to Whole of $15 or $20, and that Tomlinson & Edwards claimed to have a debt against it of $26, but when they dissolved appellee asserted that he had paid that debt and got a credit in the final settlement with said firm for the same, but as he had not in fact paid it, he should account for the amount to the firm. That he was always ready and willing to perform his part of his contract, and comply with the terms of dissolution, and for that purpose left the means in the hands of his agent when he left Kentucky to pay Ragin, Dickey & Carson the debt aforesaid. That appellee owed him much more than was sufficient to pay the last named debt, and all others that appellant had assumed to pay for said firm which he had failed and refused to pay.

And in the second paragraph of his answer he avers that appellee was justly indebted to him in the sum of $268 due by account, which he files with his answer, and pleads the same as a set-off against the demand of appellee, and prayed for judgment over the balance alleged to be due him.

Appellee filed a reply to the set-off, as it is denominated in the order of court, noting the filing thereof. In his reply he admits ap-

pellant worked for him on his house in Woodville; but alleges
he paid him for the work, and denies explicitly the other items of
the account pleaded as a set-off, except the charge for the buggy,
but for that he is credited on the account; as to the allegation in the
answer that he claimed a credit in the settlement for having paid
Tomlinson & Edwards, he neither denies it specifically, nor responds
directly; but in the last sentence of the first paragraph he says he
denies each and every allegation in defendant's counterclaim, and
calls for full proof. This general denial is not sufficient; this debt
as to the Tomlinson & Edwards debt, which appellant alleges he
improperly got credit for is not pleaded as a counterclaim, nor
set-off. But he relied on the asserted indebtedness as set forth in
the accounts filed as a set-off, and the $26 due to Tomlinson & Ed-
wards are not included in that exhibit. After concluding his nega-
tive of an indebtedness as set forth in the answer, he proceeds in
his reply as follows: Plaintiff states that  the defendant is indebted
to him in the sum of $272.05 for *groceries* sold and delivered by
plaintiff to defendant at defendant's special instance and request,
an account for which is here filed and marked "D."

No part of said account has been paid; but the same is now due
and wholly unpaid. Wherefore "Plaintiff prays judgment against
defendant for said sum and for all proper relief." This paper is
not alleged in the body thereof to be an amended petition. Nor does
the order noting the filing thereof so denominate it. Appellant, if
it was properly an amended petition, should have answered it, and
his failure to do so would have entitled appellee to a judgment by
default if the allegations had been sufficient; but treating it as a
reply, where the pleadings under the Civil Code are closed, there
could be no rejoinder.

But if we are mistaken in that view—are the allegations suffi-
cient to constitute a cause of action for the amount claimed? The
indebtedness as set forth and for which the judgment is sought is
$272.05 *for groceries sold and delivered by plaintiff to defendant
at his special instance and request.* When the account is examined
which he files, only $27.80 of it is for groceries, and they by re-
tail in very small parcels indeed. The balance to make up the
$272.05 is for one yoke of oxen at $70, a wagon at $35, 2 plows,
etc., $8.50; rent for houses, borrowed money, and one charge for
$30, but whether for borrowed money or other thing is not stated.

Under an allegation of indebtedness for *groceries* sold and delivered, proof of an indebtedness for oxen, wagon and plows, etc., would not be permitted.  Appellee, however, is as unsuccessful in his proof as he is in his allegations.  Rogers, the only witness who speaks of the oxen and plows, says he heard appellant say the oxen were appellee's and he intended to bid for them till they brought his figures.  But he proves appellant did not buy them, and does not prove that he received the price for which they sold, and as to the plows, etc., he neither proves that they were the property of appellee, nor their value.  And Scott, he proves he bought the wagon at $32.50 and bought it at the sale of appellant's property, and that he heard it was appellee's but from whom he heard it he did not state, and even if it was the property of appellee he was not entitled to more than the price for which it was sold.  Still he got a judgment for $35 for it.

And as to the borrowed money charged in the account there is no evidence whatever.  It was erroneous therefore to adjudge to appellee the amount of the account under any aspect of the case.  The cause of action set out in the original petition seems to have been abandoned.  Judgment *reversed* and cause remanded with directions for further proceedings not inconsistent with this opinion.

It is proper to observe that the writing following the attachment, containing a statement that it was levied on property of appellant is not signed by any person.  But the reversal of the judgment above which is of the 23d of May 1872, has the effect to reverse the judgment of the 31st of the same month against Burnley & Hazelwood.  Since their undertaking was that N. J. Oglevie should perform the judgment of the court in the case, and as there is no judgment against him after the reversal, they can not be responsible.

*Bigger & Mop, for appellant.*

*Bullock, for appellee.*